UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEYYED JAVAD MAADANIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Seyyed Javad Maadanian ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his counsel, brings this Class Action Complaint against Defendant Mercedes-Benz USA, LLC ("Defendant"). The action is based on personal knowledge as to matters relating to Plaintiff and his own actions, and on information and belief based on the investigation of counsel, including counsel's review of consumer complaints available on the database of the National Highway Transportation Safety Administration ("NHTSA") and other publicly available information.

CLASS ACTION COMPLAINT - 1

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

## I.   JURISDICTION AND VENUE

1. This is a civil action in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiff and at least one Defendant are citizens of different states and satisfy the diversity requirement, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

3. The number of Members of all putative classes alleged herein exceeds 100 in number within the meaning of 28 U.S.C. § 1332(d)(5)(B).

4. The primary defendants are not States, State officials, or other governmental entities within the meaning of 28 U.S.C. § 1332(d)(5)(A).

5. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to this claim occurred in the Western District of Washington.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under statutory or common law pursuant to 28 U.S.C. § 1367 because the claims arise from a common nucleus of operative facts such that adjudication of both state and federal claims furthers the interests of judicial economy.

## II.   PARTIES

7. Plaintiff Seyyed Javad Maadanian is an individual and is a resident of King County, Washington. Plaintiff is the owner of a Class Vehicle, specifically, a 2011 Mercedes-Benz ML 350, VIN # 4JGBB8GB9BA673984 (the "Vehicle").

8. Defendant Mercedes-Benz USA, LLC is a Delaware limited liability company with its principal place of business located in Sandy Springs, Georgia.

9. All acts and omissions of Defendant's employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and

scope of their duties and Defendant is therefore responsible to Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

10. Plaintiff is unaware of the true names or capacities of the Defendants sued herein as DOES 1 through 10, ("Doe Defendants"), and therefore sues said Doe Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to insert the true names and capacities of such Doe Defendants when such information has been obtained. Plaintiff is informed and believes, and based on such information and belief alleges, that each of the fictitiously named Doe Defendants participated in some way in the wrongful acts and omissions alleged herein.

### III.   FACTUAL BACKGROUND

11. Defendant is one of the world's largest and most well-known manufacturers of luxury automobiles.

12. Defendant designed its ML-Class, GL-Class and R-Class Mercedes vehicles produced from 2006 through 2012 (the "Class Vehicles") with defective brake booster housings (the "Class Defect").

13. By Defendant's own admission, the Class Defect causes abnormal and premature corrosion, which inevitably causes the vehicles to brake unsafely, or not at all.

14. Defendant first leased his Vehicle for three years beginning in or about 2010 from Mercedes Benz of Seattle, and purchased his Vehicle from the dealership following the lease expiration.

15. Upon information and belief, Defendant received complaints about reduced braking in its vehicles as early as 2006 and consistently through the date of this Complaint.

16. In July 2021, Defendant's engineers tested brake boosters from multiple of its vehicles to confirm corrosion from moisture had collected under rubber sleeves installed around the brake booster housings used for aesthetic reasons.

17. On May 12, 2022, Mercedes began warning vehicle owners of 292,287 ML-Class, GL-Class and R-Class Mercedes vehicles produced from 2006 through 2012 to cease driving their vehicles until repairs to the brake boosters could be made.

18. In a voluntary "Do Not Drive Recall" (the "Recall") issued by Defendant, it stated that:

> After extended time in the field and in conjunction with water exposure, the corrosion might lead to a leakage of the brake booster. Leakage in the brake booster could lead to reduced braking power and an increase in the brake pedal forces required to slow the vehicle and/or to potentially increased stopping distances.

19. In the same Recall, Defendant stated further:

> Additionally, in rare cases of very severe corrosion, a particularly strong or hard braking maneuver could cause mechanical damage in the brake booster, whereby the connection between the brake pedal and brake system would fail. In such a rare case, it would not be possible to slow or stop the vehicle via the service brake.

20. On Friday, May 13, 2022, Plaintiff learned that his vehicle might be part of the Recall and visited the NHTSA's website to learn more about it.

21. On the same day, Plaintiff confirmed that his vehicle was affected by the recall and that he was unable to drive it safely.

22. Plaintiff immediately parked the car and ceased using it.

23. Plaintiff spent several hours researching his options and called his local Mercedes dealership.

24. Plaintiff requested from dealership personnel a loaner vehicle or reimbursement of the cost for a rental vehicle, and he requested towing to the dealership or reimbursement for the cost of towing. Plaintiff's requests were denied.

25. Plaintiff was told that Mercedes would do nothing to assist him and that he should park the car indefinitely and cease driving it immediately.

26. Plaintiff is presently unable to drive his vehicle, has no options for repairing it, and must seek alternative transportation at his own time and expense.

27. Plaintiff and those similarly situated did not receive the benefit of their bargain because they purchased or leased a vehicle of a lesser standard, grade, and quality than represented, and did not receive a vehicle that met ordinary and reasonable consumer expectations regarding safe and reliable operation.

28. Simply put, a vehicle that does not safely brake or does not brake at all is neither safe nor dependable and is worth less on the resale market than a comparative vehicle with these attributes.

29. Defendant marketed the Class Vehicles as safe and dependable, but failed to timely disclose the existence and impact of the Class Defect and that the Class Vehicles were not safe or dependable.

30. Upon information and belief, Defendant knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Vehicles such that Plaintiff and the Class and Washington Subclass members were unaware that they had purchased vehicles that were diminished in value due to the Material Defect.

31. Upon information and belief, Defendant knowingly, affirmatively, and actively misrepresented and concealed the existence of the Class Defect.

32. Defendant knew or should have been aware of the Class Defect as early as 2006, but failed to inform Plaintiff and the Class and Washington Subclass members of the Class Defect.

33. At the time the Class Vehicles were delivered to Plaintiff and those similarly situated, they were not in a merchantable condition, were not safe, did not conform to the quality and safety guidelines reasonably expected of a motor vehicle, and were worth significantly less than the amount the Plaintiff and those similarly situated paid for the Class Vehicles.

34. Defendant also had a duty to pay for the expense of towing, repairs, and alternative transportation for Plaintiff and the Class and Washington Subclass members, but failed in that duty, refusing to timely provide loaner or rental vehicles, pay for or reimburse for towing expenses, and pay for necessary repairs.

35. Plaintiff and those similarly situated have suffered damage as a result of Defendant's wrongful conduct. This is an action to obtain a class-wide remedy for Defendant's wrongful conduct.

## IV. TOLLING OF STATUTE OF LIMITATIONS

36. <u>Discovery Rule</u>. Plaintiff's claim accrued upon discovery of the Class Defect to his Class Vehicle. While Defendant knew or should have known about the Class Defect, Plaintiff and Class and Washington Subclass members could not and did not discover this fact through reasonable diligent investigation.

37. <u>Active Concealment Tolling</u>. Any statutes of limitations are tolled by Defendant's knowing and concealment of the Class Defect on Class Vehicles. Defendant kept Plaintiff and all Class and Washington Subclass members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff, the Class, and the Washington Subclass. The details of Defendant's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and the Class and Washington Subclass members and await discovery. Plaintiff and Class and Washington Subclass members could not reasonably have discovered the Class Defect in their Class Vehicles except upon a sudden failure of the brakes on their Class Vehicles.

38. <u>Estoppel</u>. Defendant was and is under a continuous duty to disclose to Plaintiff and the Class and Washington Subclass members the true character, quality, and nature of the brakes in and breaking ability (or inability) of the Class Vehicles. At all relevant times, and continuing to the date of this Complaint, Defendant knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Class Defect of the Class Vehicles. The details of Defendant's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class and Washington Subclass members and await discovery. Plaintiff and the Class and Washington Subclass members reasonably relied upon Defendant's affirmative misrepresentations and knowing, affirmative,

1  and/or active concealment. Based on the foregoing, Defendant is estopped from relying upon any statutes of limitation in defense of this action.

39.  <u>Equitable Tolling</u>. Defendant took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased Class Vehicles with the Class Defect. The details of Defendant's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class and Washington Subclass members and await discovery. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Defendant fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## V.  CLASS ACTION ALLEGATIONS

40.  Plaintiff brings this lawsuit as a class action on behalf of himself and all other Class members similarly situated pursuant to Federal Rules of Civil Procedure, Rule 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

41.  The Class is defined as: All Persons in the United States who purchased or leased ML-Class, GL-Class and R-Class Mercedes vehicles produced from 2006 through 2012 (the "Class Vehicles"). Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

42.  Plaintiff also brings this action on behalf of a Washington Subclass, defined as follows: All Persons in Washington who purchased or leased ML-Class, GL-Class and R-Class Mercedes vehicles produced from 2006 through 2012 (the "Class Vehicles"). Excluded from the Washington Subclass are: (1) Defendant, any entity or division in which Defendant has a

EMERY | REDDY, PLLC
600 Stewart Street, Suite 1100
Seattle, WA 98101
PHONE: (206) 442-9106 • FAX: (206) 441-9711

controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.

43. Plaintiff reserves the right to amend the Class definition.

44. Plaintiff reserves the right to establish additional subclasses as necessary to conform to the facts.

45. There is a well-defined community of interest, and the class is readily ascertainable.

46. <u>Numerosity</u>. By Defendant's own admission, there are at least 292,287 Class members, all of whom can be ascertained through appropriate discovery. This number is great enough such that joinder is impracticable. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court. The Class members are readily identifiable from information and records in Defendant's possession, custody, or control, as well as from records kept by the Department of Motor Vehicles.

47. <u>Ascertainability</u>. Class members are readily identifiable from information in Defendant's possession, custody, or control.

48. <u>Typicality</u>. The claims of the representative, Plaintiff Maadanian, are typical of the claims of the Class in that the representative, like all Class members, purchased and/or leased a Class Vehicle designed, manufactured, and distributed by Defendant. The representative, like all Class members, has been damaged by Defendant's misconduct in that he has incurred the diminution of value of his vehicle, the costs in connection with the repairs of his vehicle, and the lost time and resources in connection with those repairs. Furthermore, the factual bases of Defendant's misconduct are common to all Class members and represent a common thread of deliberate, unlawful, and negligent misconduct resulting in injury to all Class members.

49. <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of each Class Member. Plaintiff acknowledges he has an obligation to make known any relationship, conflicts,

or differences with any Class member. Plaintiff's attorneys are well-versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred and will continue to incur costs and attorneys' fees to prosecute the action for the benefit of each Class member.

50. <u>Commonality</u>. There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class members. These common legal and factual issues include the following:

   a. Whether the Class Vehicles suffer from the Class Defect;
   b. Whether the Class Defect constitutes an unreasonable safety risk;
   c. Whether the Class Vehicles are merchantable or fit for their intended purpose;
   d. Whether the Class Vehicles are in safe condition and substantially free of defects;
   e. Whether a reasonable consumer would consider the Class Defect or its consequences to be material;
   f. Whether Defendant should be declared financially responsible for notifying all Class members of the problems with the Class Vehicles and for the costs and expenses of repair and replacement of the Class Vehicles; and
   g. Whether Class members have suffered loss as a result of the Class Defect, and to what extent Defendant is obligated to compensate the Class members for any and all losses, including but not limited to the time and expense of facilitating necessary repairs.

51. <u>Predominance and Superiority</u>. Plaintiff and the Class members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual Class members' claims, it is likely that only

a few Class members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### NEGLIGENCE
*On Behalf of Plaintiff and the Class and Against Defendant*

52. Plaintiff incorporates by reference all foregoing factual allegations.

53. Defendant owed Plaintiff and the Class a duty to timely provide thorough notice of known safety defects, such as the Class Defect, including providing a warning that the defective vehicles should not be driven until an appropriate repair procedure is developed and performed. Defendant also owed Plaintiff and the Class a duty, once it discovered the Class Defect, to ensure that an appropriate repair procedure was developed and made available to drivers.

54. Defendant owed a duty to Plaintiff and the Class a not to engage in deceptive conduct, including the knowing omission of material information such as the existence of the Class Defect. This duty is independent of any contractual duties Defendant may owe or have owed.

55. Defendant also owed an independent duty to Plaintiff and the Class to disclose the Class Defect under the TREAD Act, 49 U.S.C. §§ 30101, *et seq.*, and its implementing regulations. Defendant is required to send notice to owners, purchasers, and dealers of Class Vehicles whenever it "learns the vehicle or equipment contains a defect and decides in good faith that the defect is related to motor vehicle safety." 49 U.S.C. §§30118(c). Defendant was aware of the Class Defect for potentially years before notifying vehicle owners, purchasers, and dealers about the Class Defect. This duty is independent of any contractual duties Defendant may owe or have owed.

56. Defendant also had a duty to timely notify the National Highway Traffic Safety Administration (NHTSA) of the Class Defect. Defendant was aware of the Class Defect for potentially years before notifying NHTSA. This duty is independent of any contractual duties Defendant may owe or have owed.

57. Defendant had a duty to provide Class Vehicle owners with substitute transportation (or reimbursement of the cost of substitute transportation) for the duration of repairs to Class Vehicles.

58. Defendant had a duty to transport the Class Vehicles to repair sites, or to reimburse owners for the cost of such transportation.

59. Defendant had a duty to communicate a plan of action to repair the Class Vehicles, rather than simply telling owners to cease driving their vehicles.

60. A finding that Defendant owed a duty to Plaintiff and the Class would not significantly burden Defendant. Defendant has the means to efficiently and timely notify drivers of the Class Vehicles about dangerous defects, rather than delay such notification. The cost borne by Defendant for these efforts is insignificant in light of the dangers posed to Plaintiff and the Class by Defendant's failure to timely disclose the Class Defect and provide a reasonable plan to timely repair the Class Vehicles.

61. Defendant failed to disclose and deceptively concealed the Class Defect to the NHTSA, Plaintiff, and other drivers of Class Vehicles, and failed to provide appropriate notice of and repair procedures for the Class Defect. Defendant departed from the reasonable standard of care and breached its duties to Plaintiff and other drivers of the Class Vehicles.

62. Defendant's conduct was morally blameworthy. It knew about the Class Defect and knew it was dangerous. Yet, it concealed it, placing drivers of Class Vehicles at unnecessary risk.

63. Defendant's conduct was contrary to public policy favoring the disclosure of defects that may affect customer safety and the prevention of accidents, injuries, and deaths due

to defective automobiles. These policies are embodied in the TREAD Act, 49 U.S.C. § 30101, and defect notifications provisions of 49 C.F.R. § 573.1, *et seq*.

64. As a direct, reasonably foreseeable, and proximate result of Defendant's failure to exercise reasonable care, timely inform Plaintiff and the Class members of the Class Defect, provide appropriate repair procedures for the Class Defect, and provide alternative transportation during those repairs, Plaintiff and the Class members have suffered damages in that they spent more money on Class Vehicles and related purchases than they otherwise would have, are left with Class Vehicles that cannot be safely driven and which are of diminished value, and must bear the cost of transportation, towing and repairs in connection with repairing the Class Defects.

65. Plaintiff and the Class seek to recover their damages from caused by Defendant.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
*On Behalf of Plaintiff and the Washington Subclass and Against Defendant*

66. Plaintiff incorporates by reference all foregoing factual allegations.

67. Plaintiff and Washington Subclass members are "persons" within the meaning of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010(1).

68. Plaintiff incorporates by reference all foregoing factual allegations.

69. Plaintiff and Washington Subclass members are "persons" within the meaning of the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010(1).

70. Defendant is a "person" within the meaning of the CPA, Wash. Rev. Code § 19.86.010(1), and conducts "trade" and "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

71. Defendant engaged in unfair acts or practices by engaging in a pattern and practice of: (i) failing to disclose its Class Vehicles, and the braking systems on such Class Vehicles, were not of a particular standard, quality, or grade; (ii) failing to disclose, at and after the time of purchase or lease and repair, any and all known material defects or material nonconformity of the Class Vehicles, including the Material Defect; (iii) failing to disclose at the time of purchase or lease that the Class Vehicles, including the braking systems of the Class Vehicles, were not in

good working order, were defective, and were not fit for their intended purpose; (iv) failing to give adequate warnings and notices regarding the use, defects, and problems with the Class Vehicles' braking systems to customers and consumers who purchased and/or leased said Class Vehicles, despite the fact that Defendant possessed prior knowledge of the inherent defects to the Class Vehicles' braking systems; (v) failing to disclose, either through warnings or recall notices, and/or actively concealed the fact that the Class Vehicles' braking systems were defective, despite the fact that Defendant learned of such defects through consumer complaints potentially years prior to any public notice of the Class Defect; (vi) causing Plaintiff and Washington Subclass members to expend sums of money at its dealerships to repair and/or replace the Class Vehicles' braking systems, despite Defendant's knowledge of the Class Defect; and (vii) causing Plaintiff and the Washington Subclass to expend sums of money for towing costs and rental cars as a result of the effect of the Class Defect on the Class Vehicles such that the Class Vehicles could not be driven safely.

72. Defendant's systematic practice of failing to disclose defects in the Class Vehicles, failing to give adequate warnings regarding defects with the Class Vehicles, and failing to repair the Class Vehicles' braking systems are unfair because these acts or practices offend public policy as it has been established by statutes, regulations, the common law or otherwise, including, but not limited to, the public policy established by Wash. Rev. Code § 19.230.005.

73. Defendant's systematic practice of failing to disclose defects in the Class Vehicles, failing to give adequate warnings regarding defects with the Class Vehicles' braking systems, and failing to repair the Class Vehicles are unfair because these acts or practices: (1) cause substantial financial injury to Plaintiff and Washington Subclass members; (2) are not outweighed by any countervailing benefits to consumers or competitors; and (3) are not reasonably avoidable by consumers.

74. Defendant's unfair acts and practices affect the public interest. The unfair acts and practices were committed in the general course of Defendant's business and have already injured

hundreds of thousands of individuals in Washington and nationwide. There is a likelihood that Defendant's practices will injure other members of the public.

75. As a direct and proximate result of Defendant's unfair acts or practices, Plaintiff and the Washington Subclass suffered injury in fact and lost money. Defendant's unfair or deceptive acts or practices resulted in Plaintiff and the Washington Subclass: (i) expending out-of-pocket monies for repairs of the Class Vehicles, rental cars, and towing costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Vehicles as warranted and the Class Vehicles containing the Class Defect; and (iii) the diminution of resale value of the Class Vehicles resulting from the Class Defect.

76. Plaintiff and the Washington Subclass are therefore entitled to legal relief against Defendant, including recovery of actual damages, treble damages, attorneys' fees, costs of suit, and such further relief as the Court may deem proper.

77. Plaintiff and the Washington Subclass are also entitled to injunctive relief in the form of an order prohibiting Defendant from engaging in the alleged misconduct and such other equitable relief as the Court deems appropriate, including, but not limited to, disgorgement, for the benefit of Plaintiff and the Washington Subclass members, of all or part of the ill-gotten profits Defendant received from the failure to disclose defects with Class Vehicle braking systems.

## VII.   JURY DEMAND

Plaintiff and the Class and Washington Subclass hereby demand a trial by jury on all issues of fact.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Washington Subclass pray for judgment against Defendant as follows:

1. An order certifying the proposed Class and Washington Subclass, and appointing Plaintiff and his counsel to represent the Class and Washington Subclass members;

2. An order awarding Plaintiff and the Class and Washington Subclass members their

actual damages, exemplary damages, and/or any other form of monetary relief provided by law;

    3.    An order awarding Plaintiff and the Class and Washington Subclass members restitution, disgorgement, or other equitable relief as the Court deems proper;

    4.    An order requiring Defendant to adequately disclose and repair the Class Defect;

    5.    An order awarding Plaintiff and the Class and Washington Subclass members pre-judgment and post-judgment interest as allowed under the law;

    6.    An order awarding Plaintiff and the Class and Washington Subclass members their reasonable attorney fees and costs of suit, including expert witness fees; and

    7.    An order awarding such other and further relief as this Court may deem just and proper.

DATED this 16th day of May 2022.    Respectfully Submitted,

/s/ Timothy W. Emery
/s/ Patrick B. Reddy
TIMOTHY W. EMERY
WSBA No. 34078
PATRICK B. REDDY
WSBA No. 34092
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
*Attorneys for Plaintiff Seyyed Javad Maadanian*