1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SEYYED JAVAD MAADANIAN,

                        Plaintiff,

            v.

MERCEDES-BENZ USA, LLC, *et al.*,

                        Defendants.

CASE NO. 2:22-cv-00665-RSL

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO
DISMISS

        This matter comes before the Court on "Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Standing and Failure to State a Claim." Dkt. # 72. Plaintiff Seyyed Javad Maadanian, a resident of Washington, filed this lawsuit on May 16, 2022, asserting nationwide class claims under the Magnuson-Moss Warranty Act and the Washington Consumer Protection Act as well as common law theories of fraudulent concealment, negligent misrepresentation, unjust enrichment, breach of express warranty, and breach of implied warranty.[1] Defendants seek dismissal of all of Mr. Maadanian's claims.

---

[1] The claims asserted by the out-of-state plaintiffs were dismissed on July 14, 2023, Dkt. # 70, and plaintiff acknowledges that he is pursuing state claims under Washington law only, Dkt. # 78 at 37.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 1

Having reviewed the Second Amended Complaint, the memoranda submitted by the parties, the Declaration of Gregory Gunther,[2] and Exhibits B and C to defendants' request for judicial notice (Dkt. # 74-3),[3] the Court finds as follows:

## BACKGROUND

Plaintiff's 2011 Mercedes-Benz vehicle was subject to a voluntary recall involving the inspection and, if necessary, replacement of the "brake booster," a part that provides powered braking assistance to the driver. The recall was first announced on May 11, 2022, along with a notice that impacted vehicles should not be driven. Dkt. # 41 at ¶ 4. Plaintiff learned of the recall two days later and stopped using his car. *Id.* at ¶ 13. He contacted his local Mercedes-Benz dealership and requested that his vehicle be towed to the dealership for inspection and that he be provided a loaner vehicle or, in the alternative, that he be reimbursed for towing and a rental car. *Id. See also* Dkt. # 79 at ¶¶ 10-11. The requests were denied. Dkt. # 79 at ¶¶ 10-11. At the time he filed this lawsuit, plaintiff's vehicle was sitting idle, he had no options for repairing it, and he was given no assistance in securing alternative transportation or getting his vehicle inspected. Dkt. # 41 at ¶ 13.

Instructions for how to get a vehicle inspected and what repairs and ancillary costs would be covered were not sent to owners for weeks, *Id.* at ¶ 5, and plaintiff denies ever

---

[2] Mr. Gunther's declaration has been considered only in the context of defendants' factual challenge to plaintiff's standing.

[3] The Court has considered Exhibit A to defendants' request for judicial notice (Dkt. # 74-1) only insofar as it shows that Mitsubishi made certain representations to the NHTSA on a certain date. The out-of-court statements contained in Exhibit A are hearsay, however, and cannot be considered for the truth of the matters asserted.

This matter can be decided on the papers submitted. The parties' requests for oral argument are DENIED.

receiving these written notices, Dkt. # 79 at ¶ 35. In the meantime, plaintiff rented a vehicle to replace the Mercedes-Benz. *Id. See also* Dkt. # 79 at 14-16. He spent $4,653.02 on rental cars between May 17, 2022, and July 22, 2022. Dkt. # 79 at 14-16. In a conversation with customer service on June 2, 2022, plaintiff was told that Mercedes-Benz would not pay for towing expenses or provide a loaner car, but that it would reimburse rental expenses up to $80/day for one month. *Id*. at ¶¶ 16-18.

Although the sequence of events surrounding the inspection of plaintiff's vehicle is not entirely clear, it appears that Mercedes-Benz contacted him about the inspection on July 1, 2022. Plaintiff requested mobile service at his home. Dkt. # 73-3 at 2. With the inspection scheduled for July 15, 2022, Dkt. # 79 at 11-12, plaintiff (or his counsel) chose to take the car to a local service station for a "comprehensive suspension and steering system diagnostic procedure," *Id*. at 7. The technician/mechanic concluded that the "brake booster looks to be in good condition" and saw no reason for concern. *Id.* Tru-Line Bellevue charged plaintiff's counsel $424.19 for towing and evaluating plaintiff's vehicle. *Id.* Plaintiff (or his counsel) arranged to have a different company tow the Mercedes-Benz back to plaintiff's house, at a cost of $221.60. *Id.* at 9. When the Mercedes-Benz mobile service arrived on July 15, 2022, the aesthetic rubber sleeve around the brake booster housing was removed, but no problems were found with the brake booster itself. Dkt. # 73-3 at 2; Dkt. # 79 at ¶¶ 26-27. Although there was visible corrosion in the joint area, the vehicle was declared safe to drive. Dkt. # 73-3 at 2; Dkt. # 79 at ¶ 27 and 18. Plaintiff has his doubts about the efficacy of the inspection method, both because it was not designed to

remedy corrosion of less than 1.5 cm in diameter and because the technician/mechanic did not measure the corrosion. Dkt. # 79 at ¶ 27.

At some point in late July or early August, plaintiff was informed that Mercedes-Benz would reimburse $800 of his out-of-pocket expenses. *Id.* at ¶ 30. No compensation has yet been paid. *Id*. at ¶ 31.

The Mercedes-Benz New Vehicle Limited Warranty warrants against defects in material or workmanship arising during the first 48 months or 50,000, whichever comes first. Dkt. # 74-3 at 14. It also limits implied warranties of merchantability and fitness "to the first to occur of 48 months or 50,000 miles from the date of initial operation or its retail delivery, whichever event shall first occur." *Id*. at 16.

## DISCUSSION

### A. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Defendants challenge plaintiff's standing to pursue the claims he has asserted. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In order to establish a federal court's jurisdiction over a case or controversy, plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct ..., and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan*, 504 U.S. at 560-61); *Perry v. Newsom*, 18 F.4th 622, 630 (9th Cir. 2021), *cert. denied sub nom. Hollingsworth v. Perry*, 143 S. Ct. 301 (2022)). A defendant challenging the Court's jurisdiction under Rule 12(b)(1) may do so either on

the facts as alleged in the pleadings or by presenting extrinsic evidence of the true facts for the Court's consideration. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Supreme Court has emphasized that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, __ U.S. __, 141 S. Ct. 2190, 2207-2208 (2021).

Defendants argue that plaintiff has no injury in fact because any expenses he has incurred or will incur for (1) past repairs of the braking system, (2) rental or loaner vehicles, (3) future repairs, (4) towing expenses, and (5) failed attempts to identify the problem are recoverable through the recall program Mercedes-Benz established. The evidence submitted does not support this assertion. Plaintiff learned that his vehicle was subject to a stop-drive notice on May 13, 2022, and he was deprived of its use as of that date. He rented a replacement vehicle on May 17, 2022, and had his car towed to a third-party mechanic for evaluation of the brake booster problem. He has not been reimbursed for any of these expenses.[4] Plaintiff's requests for a loaner vehicle, towing assistance, and rental reimbursement were all rejected, and when defendants belatedly offered to pay a fraction of the expenses he incurred, the payment never materialized.[5] Plaintiff has

---

[4] Whether plaintiff, as opposed to his counsel, paid for the towing and third-party diagnostic services is not clear. Regardless, plaintiff has not been reimbursed for his out-of-pocket rental costs.

[5] Defendants' repeated assertion that these expenses will be reimbursed under the recall program is also unsupported. The Safety Recall Report indicates only that a Mercedes-Benz dealer will help coordinate an individual mobility solution for a customer whose vehicle is inspected, shows advanced corrosion, does not pass the additional functional performance test, and cannot be repaired immediately. Dkt. # 74-2 at 9. The owner notice letter sent out in June 2022 similarly promises an individual mobility solution only where the inspection shows that a break booster repair is necessary but it cannot be performed immediately. Dkt. # 73-2 at 3. Where, as in plaintiff's case, he simply

suffered the loss of use of his vehicle and the expenditure of funds as a result of the recall. He has, therefore, suffered injury in fact that is causally connected to defendants' actions.

Plaintiff also alleges that he paid too much for what he now knows is a defective vehicle and/or that the value of his vehicle is diminished because of the defect. Dkt. # 41 at ¶¶ 9, 14, and 198. Defendant argues that this claim fails as a matter of law because there is no allegation or evidence that plaintiff's vehicle is defective. They make this argument by referencing cases in which such a finding was made, but without addressing the allegations and evidence in this case. The defect at issue in this case was caused by an aesthetic rubber sleeve installed around the brake booster housing. Moisture was able to wick under the sleeve, causing corrosion in the joint area of the brake booster housing. If the corrosion progresses far enough, the brake booster will leak, requiring more force on the pedal to stop and/or increasing the stopping distances. In cases of very severe corrosion, a strong or hard braking maneuver could mechanically damage the brake booster, disconnecting the brake pedal from the braking system entirely. Dkt. # 74-2 at 7-8. Plaintiff has provided evidence that the rubber sleeve was part of the design of his vehicle and that it ultimately caused visible corrosion in the joint area of the brake booster housing: although the sleeve was removed, the corrosion was not repaired. Dkt. # 79 at ¶ 27.[6] Unlike the cases on which

---

needed alternative transportation options while the stop-drive notice was in effect, the recall offers mere possibilities: that "a dealer may be able to provide a loaner vehicle" or may offer another solution, "such as taxi/rideshare, public transportation cost reimbursement, and/or rental reimbursement." *Id.* A statement that reimbursement is available at one party's sole discretion is not a promise of reimbursement, and plaintiff has not, in fact, been reimbursed.

[6] The recall procedures called for the removal of the rubber sleeve and inspection of the joint area of the brake booster housing. Dkt. # 74- at 9. If the joint area is corroded, the technician determines whether it is "advanced" or not. *Id.* If not, as in plaintiff's case, the vehicle is cleared for driving with no further action.

defendants rely, the design defect existed at the time of purchase, corrosion manifested itself in plaintiff's vehicle, and the recall program did not correct the problem. In these circumstances, plaintiff will be given an opportunity to show that the design defect and/or post-remedy defect was more than simply a blemish and had an actual impact on the vehicle's value.

The cases on which defendants rely to argue that, where a recall exists, a vehicle owner cannot show actual injury that can be addressed in a civil action, Dkt. # 72 at 24, do not support such a sweeping statement. In *Hadley v. Chrysler Group, LLC*, 624 Fed. App'x 374 (6th Cir. 2015), for example, the court found that the manufacturer promised to repair the defect for free as quickly as possible, it did in fact repair the plaintiffs' vehicle, and the only loss of use occurred when plaintiffs were at the dealership having the repair work they requested done. In *Flores v. FCA US LLC*, No. 19-10417, 2020 WL 7024850, at *4 (E.D. Mich. Nov. 30, 2020), the repair performed as part of the recall removed the defect upon which the plaintiffs' diminished-value injury claim was based, and the court noted that a bare claim of "damage," in the absence of any supporting facts, was insufficient to establish actual injury. In *Tarsio v. FCA US LLC*, No. 22-CV-9993(NSR), Dkt. # 21 at *8 (S.D.N.Y. Apr. 8, 2024), the recall would remedy the complained-of defect free of charge, and plaintiff had not alleged any other losses. Rather than establish a bright line rule

---

Contrary to defendants' argument in reply, plaintiff's Second Amended Complaint adequately discloses his theory that corrosion of brake components is a defect, that defendants knew of the dangers posed by such corrosion before it sold his vehicle, and that he continues to suffer the threat of brake failure because of the defect. *See, e.g.*, Dkt. # 41 at ¶¶ 2, 91-92, and 198. The submission of evidence obtained after the original complaint was filed to show that corrosion remains post-recall is a timely and reasonable response to defendants' standing challenge.

regarding the legal effect of a recall, almost all of the cases cited show that actual injury is

an intensely fact-based determination, with plaintiff's standing (or the mootness of his

claims) dependent on the facts of the case.[7] As Judge Román recognized in *Tarsio*, where a

recall is not fully effective, as is arguably the case here, dismissal is not appropriate simply

because a recall has issued. *Id.* at *7 and 9.

   In a scattershot attempt to obtain dismissal of plaintiff's claims, defendants suggest

that considerations of mootness, deference to agency action, a preference for recalls over

litigation, and/or ripeness should shield them from the risks of litigation when they have

acted responsibly by initiating a voluntary recall. Dkt. # 72 at 23-26. The only theory that

is discussed in any detail is prudential mootness. *Id.* at 23-25. "To establish prudential

mootness, events must 'so overtake a lawsuit that the anticipated benefits of a remedial

decree no longer justify the trouble of deciding the case on the merits,' and there may be

no claim for monetary damages." *Flores*, 2020 WL 7024850, at *4 (quoting *Winzler v.

Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012)). Because plaintiff

has a viable claim for monetary damages that has not been remedied through the recall, the

Court will carry on with the business of deciding the merits of the case.

---

   [7] One exception is *Sugasawara v. Ford Motor Co.*, No. 18-cv-06159-LHK, 2019 WL 3945105, at *5 (N.D. Cal. Aug. 21, 2019), in which plaintiffs' claim for the costs to repair the acknowledged defect was rejected because plaintiffs had not alleged that they had actually paid out-of-pocket to repair or replace the part. The court went further, however, and stated in *dicta* that even if such allegations had been made, the costs "may have been eligible for a reimbursement from Ford." *Id.* Although the court did not say that the possibility of reimbursement would deprive plaintiffs of Article III standing, that is the clear implication of the "even if" statement. The *Sugasawara* court does not explain how the possibility of reimbursement under a recall program erases the fact of damage arising from an expense for which reimbursement was denied. In such circumstances, the lawsuit provides a realistic chance for plaintiffs to redress their loss, and standing exists.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 8

1    Defendants' last standing challenge is to plaintiff's ability to pursue claims related

2  to vehicles he did not purchase. A plaintiff must demonstrate standing for each claim he

3  asserts and for each form of relief sought. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332,

4  351–352 (2006). Plaintiff's claims arise under the Magnuson-Moss Warranty Act, the

5  Washington Consumer Protection Act, and theories of fraud, negligent representation,

6  unjust enrichment, breach of express warranty, and breach of implied warranty. Each claim

7  is based on allegations regarding a common defect, namely a defective breaking system

8  manufactured by Continental Tire the Americas, LLC, that was installed across all recalled

9  models and years. Dkt. # 74-2 at 8. Although there are three different component part

10 numbers associated with the defective brake boosters, *id*., defendants do not point to any

11 distinction or difference between the parts or otherwise attempt to show that the brake

12 booster installed in plaintiff's model was not functionally equivalent to all the others.

13 Plaintiff has standing to pursue claims involving a common defect across the various

14 models and years at issue. To the extent defendants are challenging plaintiff's ability to

15 certify a class because the recalled vehicles showed different levels of corrosion and were

16 treated differently following inspection, that issue is not one of standing.

17 **B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

18    The question for the Court on a motion to dismiss under Rule 12(b)(6) is whether

19 the facts alleged in the complaint sufficiently state a "plausible" ground for relief. *Bell Atl.*

20 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "accept factual allegations in

21 the complaint as true and construe the pleadings in the light most favorable to the

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 9

nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). The Court's review is generally limited to the contents of the complaint. *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). "We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

> To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." []*Twombly*, 550 U.S. [at 570]. A plausible claim includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *U.S. v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under the pleading standards of Rule 8(a)(2), a party must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). . . . . A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

*Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1144–45 (9th Cir. 2021). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**1. Shotgun pleading**

Although plaintiff refers to defendants as a collective throughout the Second Amended Complaint, he individually describes each Mercedes-Benz entity and its relationship to the other two Mercedes-Benz defendants. Dkt. # 41 at ¶¶ 67-74. He alleges a coordinated, vertically-integrated effort to sell vehicles in the United States and mislead the consuming public, with all three defendants working together as principles/agents and/or alter egos of each other. *Id.* These allegations might not be true, but the theory is adequately stated and does not deprive defendants of their ability to understand the nature of the claims asserted against them. Nor do defendants explain how the incorporation of facts regarding the recall into each claim caused them confusion or prevents an informed response. The Second Amended Complaint is not a "shotgun pleading."

**2. Fraud-Based Claims (Nationwide Counts II and III)**

Claims sounding in fraud must also satisfy Rule 9(b). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). The rule requires that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The rule "serves three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and

economic costs absent some factual basis.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotations omitted, brackets in original). To accomplish these goals, Rule 9(b) requires that "[a]verments of fraud ... be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 520 F. Supp. 3d 1258, 1265 (C.D. Cal. 2021) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The circumstances constituting fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).

The fraudulent concealment (Nationwide Count II) and negligent misrepresentation (Nationwide Count III) claims asserted in the Second Amended Complaint both sound in fraud: the negligent misrepresentation claim is based on the assertion that defendants had a duty to disclose because they knew of the brake defect. Dkt. # 41 at ¶ 171.[8] The underlying factual allegations are consistent with mere negligence, however, in that they start with the undifferentiated assertion that "[d]efendants fraudulently, intentionally, negligently and/or recklessly concealed" from plaintiff the brake defect even though they knew or should have known of the defect. *Id.* at ¶ 80. A negligent failure to disclose cannot establish a fraud claim.

---

[8] At oral argument, plaintiff's counsel argued that even if pre-sale knowledge of the defect were not adequately pled, the negligent misrepresentation claim would still survive. The argument was not made in the opposition memorandum, which appears to concede that Rule 9(b) applies to both Count II and Count III. Dkt. # 8 at 39.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

According to the Second Amended Complaint, the essential element of pre-sale knowledge of the defect is based on: (a) the fact that Mercedes-Benz performs pre-production testing and quality control analyses; (b) receipt of consumer complaints; (c) a June 2009 notice to dealerships that the protective coatings on brake components and hardware can be stripped away by highly concentrated acid-based cleaners, resulting in corrosion of exposed components and hardware, and (d) a July 2017 recall to replace a brake booster vacuum line that had a weak connector. *Id*. at ¶¶ 82-97.

(a) There is no indication that defendants' product testing or analysis revealed that the aesthetic rubber sleeve around the brake booster housing caused corrosion in the joint area. *Id.* at ¶ 82. Plaintiff provides no specifics regarding the nature of the testing, when it occurred, who conducted it, what was found, or any of the details that could justify an allegation of fraud against one or more of the defendants.

(b) The consumer complaints on which plaintiff relies, quoted verbatim in the Second Amended Complaint, involve general reports of failed or diminished braking power, locked brakes, unexplained accelerations, and leaking brake fluid. *Id.* at ¶ 87. Not only is there no indication that these issues were caused by an aesthetic rubber sleeve and/or corrosion in the joint area, but many of the entries are dated after 2011[9] and state that defendants were unable to duplicate or diagnose the problems.

---

[9] Plaintiff has not alleged when he purchased his 2011 vehicle.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 13

(c) The June 2009 notice to dealerships of the potential for damage to braking components caused by the use of highly concentrated acid-based cleaners is unrelated to the facts that water could become trapped in the brake booster housing and cause corrosion. That both issues involve damage to the braking system is not enough to give rise to a plausible inference that knowledge of one problem led to knowledge of the other.

(d) Finally, the 2017 recall not only post-dates the manufacture and presumed sale of plaintiff's 2011vehicle, but it, too, involved a different problem with a discrete and localized solution. Plaintiff offers nothing but conjecture and speculation in support of his theory that replacing the connector in the brake booster vacuum line would have shown that the aesthetic sleeve was trapping water and/or that the water was causing corrosion in the joint area.

The factual allegations in support of the fraud-based claims lack the particularity required by Rule 9(b). As was made clear at oral argument, plaintiff is essentially asking the Court to presume pre-sale knowledge of the defect based on the assertion that anyone with an engineering degree would know that trapping moisture on metal parts would cause corrosion. Not only does this hypothesis assume that defendants were aware that the sleeves were trapping water, but Rule 9(b) requires more than supposition and speculation regarding what each defendant knew and when it knew it before a fraud claim will be allowed to proceed to discovery.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 14

### 3. Express Warranty Claim (Nationwide Count VI)

Plaintiff seeks the repair or replacement of the corroded joint area of the brake booster housing under express warranties provided by defendants. Dkt. # 41 at ¶ 204. He specifically alleges, however, that the nature of the defect was inherent in the design of the brake booster housing (as opposed to the result of defective materials or workmanship that prevents the product from meeting the manufacturer's design specifications). *Id.* at ¶ 207.[10] Apparently recognizing that defendants' written warranties do not cover design defects and that his claim is untimely,[11] plaintiff argues that the warranty is unconscionable and/or unfair given that defendants knew of and concealed the defect at issue here. Dkt. # 41 at ¶¶ 112-16 and 209-10. The unconscionability argument is based on allegations of fraud: according to plaintiff, the exclusion of design defects from the warranty is unenforceable because defendants hid the fact that the brake booster housing was defective and excluded such design defects from the scope of the warranty. As discussed above, fraud has not been adequately pled, and the express warranties, on their face, do not apply.

---

[10] In his opposition to defendants' motion for summary judgment, plaintiff argues that his breach of express warranty claim is not limited to a design defect and instead comprehends defects in materials and manufacturing. While he does include the phrase "[w]ithout limitation" in paragraph 149 of the Second Amended Complaint, the facts alleged support only a design defect claim. Plaintiff at no point alleges any facts which could support a claim that the design of the brake booster housing – in particular, the decision to install an aesthetic rubber sleeve – was appropriate but that the materials or workmanship used in manufacturing the sleeve were defective. It is not simply that plaintiff failed to say the words "materials or workmanship," but that the nature of the defect alleged is one of design, as specifically alleged in paragraph 207.

[11] The New Vehicle Limited Warranty at issue promises to "make any repairs or replacements necessary[] to correct defects in materials or workmanship arising during the warranty period" of 48 months or 50,000 miles, whichever occurs first. Dkt. # 74-3 at 14.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 15

**4. Implied Warranty Claim (Nationwide Count VII)**

In their written warranties, defendants limited the implied warranties of merchantability and fitness "to the first to occur of 48 months or 50,000 miles from the date of initial operation or [the vehicle's] retail delivery." Dkt. # 74-3 at 16. In addition, Washington law imposes a four-year limitations period on actions for breach of warranty.[12]

> An action for breach of warranty must be brought within four years after the cause of action has accrued. RCW 62A.2–725(1).
>
> > A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.
>
> RCW 62A.2–725(2). In other words, the statute of limitations period normally starts upon delivery of the goods. *Holbrook, Inc. v. Link–Belt Constr. Equip. Co.*, 103 Wn. App. 279, 284 (2000). However, if goods are sold with a warranty of future performance, the statute of limitations starts from the date when the defect is or should have been discovered. *Id.* RCW 62A.2–725 provides a point of finality for businesses after which time they can destroy their business records without fear of a subsequent breach of warranty suit arising. *Cent. Wash. Refrigeration, Inc. v. Barbee*, 81 Wn. App. 212, 225 (1996), *rev'd on other grounds*, 133 Wn.2d 509 (1997).

*Kittitas Reclamation Dist. v. Spider Staging Corp.*, 107 Wn. App. 468, 472 (2001).

---

[12] Washington allows for modification of the statutory duration of implied warranties. RCW 62A.2-314(1); RCW 62A.2-316.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 16

Plaintiff argues that a design defect claim regarding his 2011 Mercedes-Benz vehicle is not barred by the statute of limitations because he could not reasonably discover the defect until he received notice of the recall. The discovery rule does not, however, apply to warranty causes of action under the language of RCW 62A.2–725(2). *See Giraud v. Quincy Farm & Chem.*, 102 Wn. App. 443, 455 (2000).[13] Plaintiff also argues that the limitations period was tolled because defendants fraudulently concealed the defect at issue. RCW 62A.2-725(4) makes clear that the statute does not alter the law on tolling but, as described above, plaintiff has not adequately pled fraud. The doctrine of fraudulent concealment does not, therefore, extend the limitations period.[14]

### 5. Magnuson-Moss Warranty Act (Nationwide Count I)

Defendants argue that plaintiff's Magnuson-Moss Warranty Act claim fails because there are too few named plaintiffs and he has no viable state law warranty claims. Plaintiff does not address these arguments or otherwise oppose dismissal of the federal claim.

### 6. Unjust Enrichment (Nationwide Count IV)

Defendants argue that plaintiff's unjust enrichment claim is preempted by the Washington Products Liability Act ("WPLA"). The WPLA provides a cause of action for

---

[13] Plaintiff does not and cannot argue that the implied warranty extends to future performance. "The overwhelming majority of courts have interpreted future performance exceptions ... very strictly. To come within the future performance exception, a warranty must explicitly promise or guarantee future performance of the goods; it must be clear, unambiguous and unequivocal." *Holbrook, Inc. v. Link-Belt Const. Equip. Co*., 103 Wn. App. 279, 286–87 (2000) (quoting *Crouch v. Gen. Elec. Co*., 699 F. Supp. 585, 594 (S.D. Miss. 1988)).

[14] Defendants' alternative argument based on a lack of contractual privity is rejected. There is a third-party beneficiary exception to the privity requirement for implied warranties that applies where the remote manufacturer provides a warranty to the retailer which is intended to benefit the ultimate consumer. *Tex Enterprises, Inc. v. Brockway Standard, Inc*., 149 Wn.2d 204, 210 (2003). Plaintiff alleges that that is the case here. Dkt. # 41 at ¶ 225.

harm caused by products that are not designed, constructed, or labeled in a reasonably safe manner, RCW 7.72.030, and "supplants previously existing common law remedies, including common law actions for negligence," *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 322 (1993). However, "harm" for purposes of the statute "does not include direct or consequential economic loss." *Hoefs v. Sig Sauer Inc.*, No. 3:20-CV-05173-RBL, 2020 WL 3488155, at *2 (W.D. Wash. June 26, 2020) (quoting *Moodie v. Remington Arms Co., LLC*, No. C13-0172-JCC, 2013 WL 12191352, at *6 (W.D. Wash. Aug. 2, 2013) and RCW 7.72.010(6)). Plaintiff is seeking to recover economic losses in this litigation. His claim is not preempted by the WPLA.

"A party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *Hurlbut v. Crines*, 14 Wn. App.2d 660, 672–73 (2020) (quoting *Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604 (1943)). Although defendants argue that plaintiff's remedies are limited to those available through the express warranties, those warranties do not cover design defects, as discussed above. The warranties do not, therefore, pose an impediment to plaintiff's unjust enrichment claim. *Pierce Cnty. v. State*, 144 Wn. App. 783, 829–30, *as amended on denial of reconsideration* (July 15, 2008) (applying unjust enrichment because written contract did not cover the subject matter for which the implied agreement was sought).

Defendants' last argument is that plaintiff has not adequately alleged that he conferred a benefit on them because he fails to allege that he purchased his vehicle directly

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 18

from defendants or from an entity with a sufficiently direct relationship with defendants to

support an inference that they benefited from his payment. Under Washington law, a party

claiming unjust enrichment must allege both that he conferred a benefit upon the defendant

and that the acceptance or retention by the defendant of the benefit without payment would

be unfair. *Young v. Young*, 164 Wn.2d 477, 484 (2008).

> Unjust enrichment is the method of recovery for the value of the benefit
> retained absent any contractual relationship because notions of fairness and
> justice require it. *See Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc*., 61 Wn.
> App. 151, 160 (1991) ("Unjust enrichment occurs when one retains money
> or benefits which in justice and equity belong to another.").

> In such situations a quasi contract is said to exist between the parties. *Bill v.
> Gattavara*, 34 Wn.2d 645, 650 (1949) (stating "the terms 'restitution' and
> 'unjust enrichment' are the modern designations for the older doctrine of
> 'quasi contracts.' "); *State v. Cont'l Baking Co*., 72 Wn.2d 138, 143 (1967)
> (" 'If the defendant be under an obligation, from the ties of natural justice, to
> refund; the law implies a debt, and gives this action, founded in the equity of
> the plaintiff's case, as it were upon a contract, (*quasi ex contractu*) ....' ")
> (internal quotation marks omitted) (quoting *State ex rel. Employment Sec.
> Bd. v. Rucker*, 211 Md. 153, 157–58, 126 A.2d 846 (1956) (quoting *Moses v.
> Macferlan*, 2 Burr. 1005, 97 Eng. Rep. 676, 678 (1760))).

>> "Three elements must be established in order to sustain a claim based
>> on unjust enrichment: a benefit conferred upon the defendant by the
>> plaintiff; an appreciation or knowledge by the defendant of the
>> benefit; and the acceptance or retention by the defendant of the benefit
>> under such circumstances as to make it inequitable for the defendant
>> to retain the benefit without the payment of its value."

> *Bailie Commc'ns*, 61 Wn. App. at 159–60 (quoting Black's Law Dictionary
> 1535–36 (6th ed.1990)). *See also Lynch v. Deaconess Med. Ctr*., 113 Wn.2d
> 162, 165 (1989) (stating elements as "the enrichment of the defendant must

be unjust; and ... the plaintiff cannot be a mere volunteer."). In other words the elements of a contract implied in law are: (1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment.

*Young*, 164 Wn.2d at 484–85. Neither the state Supreme Court's statement of the elements of a claim for unjust enrichment nor the equitable considerations which underlie it support defendants' argument that the benefit must be conferred on them directly, rather than through the intermediary of a Mercedes-Benz dealership.[15] Plaintiff's allegations, including the assertions that defendants sold the class vehicle to him and that he conferred a benefit upon them when he overpaid for his vehicle (Dkt. # 41 at ¶¶ 115 and 179), raise a plausible inference that the money paid for the vehicle enriched the named defendants.

### 7. Washington Consumer Protection Act ("CPA") (Nationwide Count V)

To the extent plaintiff seeks a recall, buyback, and/or replacement of class vehicles as a remedy for the alleged CPA violation, defendants argue that the claim is preempted by the National Highway Transportation Safety Act, 49 U.S.C. § 30101 *et seq*. Defendants do not challenge the adequacy of plaintiff's allegations regarding the elements of a CPA claim or the viability of his claims for injunctive relief, damages (trebled), punitive damages, attorney's fees, or costs.

In the Second Amended Complaint, plaintiff does not use the words recall, buyback, or replacement, but he seeks an order enjoining unfair and/or deceptive acts,

---

[15] Defendants' citation to *Schechter v. Hyundai Motor Am.*, No. CV 18-13634 (FLW), 2019 WL 3416902, at *11 (D.N.J. July 29, 2019), an unpublished decision applying New Jersey law, is unpersuasive.

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 20

including misrepresenting the safety of the class vehicles and forcing  consumers to bear the costs of repair or replacement. Dkt. # 41 at ¶¶ 191 and 194. For purposes of this motion, the Court assumes that some combination of the relief requested would be equivalent to a recall. Nevertheless, defendants make no effort to show that preemption applies, relying on little more than a bare assertion that "[t]he Safety Act preempts state laws permitting a court-ordered recall" followed by a string of case citations from outside of the Ninth Circuit. Dkt. # 72 at 43-44. Defendants do not identify an express preemption provision in the Safety Act, nor do they attempt to show that federal law so thoroughly occupies the field of vehicle safety regulation "as to make reasonable the inference that Congress left no room for the States to supplement it," *Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 153 (1982), that "it is impossible [ ] to comply with both state and federal requirements," *English v. Gen. Elec. Co*., 496 U.S. 72, 79 (1990), or that the CPA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *id*.

The Supreme Court has cautioned that "courts should not lightly infer preemption." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). For plaintiff's CPA claim to be conflict-preempted, "[t]here must be 'clear evidence' of such a conflict." *Chamberlan v. Ford Motor Co*., 314 F. Supp. 2d 953, 957 (N.D. Cal. 2004) (quoting *Geier v. Am. Honda Motor Co*., 529 U.S. 861, 885 (2000)). "Speculative or hypothetical conflict is not sufficient: only State law that 'actually conflicts' with federal law is preempted." *Id*. (quoting *Cipollone v. Liggett Group, Inc*., 505 U.S. 504, 516 (1992)). The fact that some

ORDER GRANTING IN PART DEFENDANTS' MOTION
TO DISMISS - 21

aspects of the relief sought under the CPA may also be available through the Safety Act does not suggest a conflict and is not enough to trigger conflict preemption. Nor is defendants' bare assertion that application of the CPA would "frustrate the agency-coordinated recall," Dkt. # 72 at 44, persuasive. Defendants do not argue, much less show, that the federal agency has exclusive authority to order a recall of motor vehicles. Nor do they explain how a court-ordered remedy in this case would frustrate the objectives of the Safety Act. Several courts in this Circuit have addressed this same frustration-of-purpose argument and rejected it. *See, e.g., Lassen v. Nissan N. Am., Inc*., 211 F. Supp. 3d 1267, 1277–78 (C.D. Cal. 2016); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig. (In re Unintended Acceleration)*, 754 F. Supp. 2d 1145, 1195–96 (C.D. Cal. 2010); *Kent v. DaimlerChrysler Corp*., 200 F. Supp. 2d 1208, 1212–13 (N.D. Cal. 2002). In the absence of any substantive assistance from defendants, the Court is persuaded by the thoughtful analyses in these cases and rejects their preemption argument.

### 8. Equitable Relief

Defendants argue that plaintiff's claims for equitable, declaratory, and injunctive relief should be dismissed because (1) he has an adequate remedy at law and (2) he has not alleged facts showing a likelihood that he will experience any future injury. Plaintiff specifically alleges that he does not have an adequate remedy at law and, as to his equitable claim of unjust enrichment, the claim is plead in the alternative. Dkt. # 41 at ¶¶ 176 and 184. It is premature to dismiss the equitable claim before the Court determines

whether plaintiff's legal theories are viable and, to the extent plaintiff requests

disgorgement as a remedy, the relief likely varies from that available under law. *See*

*Martinez v. ZoomInfo Techs. Inc*., C21-5725MJP, 2022 WL 1078630, at *7 (W.D. Wash.

Apr. 11, 2022). With regards to the claims for declaratory and injunctive relief, plaintiff

asserts continuing and future injury and has supported that allegation with evidence of

unremedied corrosion in the joint area of the brake booster housing on his vehicle. The

equitable claims may proceed.

For all of the foregoing reasons, defendants' motion to dismiss is GRANTED in

part and DENIED in part. Plaintiff has standing to pursue the claims asserted and has

adequately pled his unjust enrichment, CPA, and equitable claims. The other claims are

hereby DISMISSED.

Dated this 11th day of April, 2024.

Robert S. Lasnik
United States District Judge