1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8 | SEYYED JAVAD MAADANIAN,
Individually and on Behalf of All
9 | Others Similarly Situated,

10 |                            Plaintiff,

11 |        v.

12

13 | MERCEDES-BENZ USA, LLC,
MERCEDES-BENZ
AKTIENGESELLSCHAFT, and
14 | MERCEDES-BENZ GROUP
AKTIENGESELLSCHAFT,

15

                            Defendants.

CASE NO. 2:22-cv-00665

**STIPULATED AGREEMENT
REGARDING DISCOVERY OF
ELECTRONICALLY STORED
INFORMATION AND ORDER**

16

17

18

19

20

21

22

23

24

25 | AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                              PAGE - 1
26 | (Case No. 2:22-cv-00665)

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible.  This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case.  The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.      ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.      Custodians. The custodians likely to have potentially relevant information in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control. The parties are expected to meet and confer to establish the appropriate number of custodians to be disclosed based on the complexity, proportionality and nature of the case.  Disputes should promptly be submitted to the Court for resolution.  This disclosure provision is distinct from the parties'

agreement set forth in Section C below about determining the number of custodians from whom ESI should be gathered.

2.    <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain potentially relevant information.

3.    <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain potentially relevant information (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain potentially relevant information (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). Section (D)(3) below sets forth data sources and ESI which are not required to be preserved by the parties. Those data sources and ESI do not need to be included on this list.

5.    <u>Foreign Data Privacy Laws.</u>  "Foreign Private Data" shall mean any personal or private information that a Producing Party believes in good faith to be subject to foreign (i.e., non-US) data protection laws or other foreign privacy obligations, including without limitation: the Directive 95/46/EC of the European Parliament and the Council of 24 October 1995 on the protection of individuals with regard to the processing of personal data and on the free movement of such data (the "EU Data Protection Directive"); Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data ("General Data Protection Regulation"); the German Federal Data Protection Act (Bundesdatenschutzgesetz –

BDSG); and the German Telecommunications Act (Telekommunikationsgesetz – TKG).  If any Producing Party is called upon to produce Discovery Material in this lawsuit that contains Foreign Private Data, such Producing Party may designate such Discovery Material as CONFIDENTIAL under the terms of this Order.  This Order does not address the redaction or withholding of Foreign Private Data, if any.  If a Producing Party wishes to redact or otherwise withhold Foreign Private Data, the Producing Party shall meet and confer with the Receiving Party in advance of applying any such redactions to discuss the scope of any proposed redactions before bringing any dispute before the Court.

**C.     ESI Discovery Procedures**

1.     <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.     <u>Known Responsive ESI Must Be Produced</u>.  Documents or ESI known to be responsive to a discovery request and that is/are not otherwise subject to objection shall be produced, or logged on a privilege log, without regard to whether it was responsive to any search methodology described herein or developed in accordance with this order.

3.     <u>Discrete Document Collections / Custodian Identified Files</u>.  Discrete folders or collections of information believed by a Producing Party to be substantially comprised of Documents relevant to the claims and defenses in this proceeding, such as a folder of Documents gathered by a custodian because they believe the materials to be relevant, will be reviewed for possible production without excluding any document from consideration using search terms or other culling tools and will be prioritized for review and production.

4.      <u>Search methodology.</u> If the Producing Party is identifying or culling potentially relevant or responsive materials, which are not already known to be responsive, using search terms, the parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies, before any such effort is undertaken. During the meet and confer process, the Producing Party will disclose relevant English and foreign language company terminology (or equivalent) and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any.  The parties shall continue to cooperate in revising the appropriateness of the search methodology.

a.      Prior to running searches:

i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.

ii.      After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the non-producing party.

iii.      The following provisions apply to search terms / queries of the requesting party.  Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided.  A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  The producing party may identify each search

term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

iv.     Nothing in this Order will limit a Producing Party's ability to review documents for responsiveness prior to production.

b.     Upon reasonable request, a party shall disclose information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

5.     <u>Validation of Search Methodology and Results</u>.  The Parties shall participate in a process in which they will meet and confer regarding reasonable and appropriate validation procedures and random sampling of Defendants' Documents (both of non-responsive sets and of the entire collection against which search terms were run or TAR or other identification or classification methodology was used), in order to establish that an appropriate level of end-to-end recall (the percentage of responsive Documents in the collection which were identified as responsive by Defendants' methodology) has been achieved and ensure that the Defendants' search methodology was reasonable and proportional to the needs of the case.  To the extent the Parties cannot agree to the appropriate level of end-to-end recall, they will seek guidance from the Court.  For the avoidance of doubt, any such validation and sampling process will not require Defendants to produce to Plaintiff information that is not relevant to any party's claim or defense or which is not proportional to the needs of the case.

6.     <u>Use of TAR</u>.  If a producing party plans to use technology-assisted review

("TAR"), also known as "predictive coding," to identify or cull documents to be reviewed or produced, the producing Party will notify the Parties in advance to discuss an appropriate TAR Protocol for that type of review.  TAR processing will not be "stacked" with the application of search terms, i.e., TAR will not be applied before or after any application of search terms.

7.   <u>Unsearchable Documents</u>.  If a party knows that the use of a particular search methodology or terminology will be ineffective based on the text or format of particular documents (because, for example, the document has light text and OCR is ineffective), those documents must be reviewed by other means.

8.   <u>Format.</u>

a.   ESI will be produced to the requesting party with searchable text, in a format to be decided between the parties. Acceptable formats include native format (for spreadsheets and other documents that are not easily converted to image format) and single-page TIFFs (only with load files for e-discovery software that includes metadata fields identifying natural document breaks and also includes companion OCR and/or extracted text files).  Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.

b.   Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet and drawing files, will be produced in native format. The Parties will meet and confer regarding the production of structured data stored within databases.

c.   Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the

underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

        d.    If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

        e.    The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with appropriate software load files containing all information required by the litigation support system used by the receiving party.

        f.    The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

        9.    <u>De-duplication.</u> The parties may globally de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information extracted during the de-duplication process tracked in a duplicate/other custodian field in the database load file.  Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file).  Near-duplicate documents shall not be removed.  Standalone documents shall not be deduplicated against email attachments.  The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the ALLCUSTODIANS metadata field.  The original file paths

1   of a document prior to deduplication will be populated in the ALLFILE PATHS metadata field.[1]

2   The producing party will make a reasonable effort to identify all custodians who were in

3   possession of the de-duplicated document.

4         10.   Email Threading.  The parties may use analytics technology to identify email

5   threads for their own internal review and other internal processes, although no email may be

6   withheld from production or not logged for privilege because it is included in whole or in part in

7   a more inclusive email.

8         11.   Metadata fields. If the requesting party seeks metadata, the parties agree that only

9   the following metadata fields need be produced, and only to the extent it is reasonably accessible

10  and non-privileged: document type; custodian and duplicate custodians (or storage location if no

11  custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name; file size;

12  file extension; all file paths; date and time created, sent, modified and/or received; whether has

13  hidden data, track changes, or comments; threadID; redactions; and hash value.  The list of

14  metadata type is intended to be flexible and may be changed by agreement of the parties,

15  particularly in light of advances and changes in technology, vendor, and business practices.

16        12.   Hard-Copy Documents. If the parties elect to produce hard-copy documents in an

17  electronic format, the production of hard-copy documents will include a cross-reference file that

18  indicates document breaks and sets forth the custodian or custodian/location associated with each

19  produced document. Hard-copy documents will be scanned using Optical Character Recognition

20  technology and searchable ASCII text files will be produced (or Unicode text format if the text is

21  in a foreign language), unless the producing party can show that the cost would outweigh the

22

---

23      [1] If a Producing Party believes in good faith that producing File Path metadata field for a

24  particular document or set of documents is too burdensome, then the Parties shall meet and confer in good faith before bringing any dispute before the Court.

25  AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                       PAGE - 9

26  (Case No. 2:22-cv-00665)

usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

13.     <u>Redactions</u>.  Those redactions permitted within a produced document or ESI item are set forth by this Order or the Protective Order agreed and/or entered in this litigation. Producing Party reserves the right to move the court for leave to determine whether certain competitively sensitive non-relevant content with an otherwise responsive document can be redacted on the grounds that the information is beyond the scope of relevance under Federal Rule of Civil Procedure 26.

14.     <u>Parent-Child Relationships</u>.  Parent-child relationships (the association between an attachment and its parent document or between embedded documents and their parents) shall be preserved to the extent doing so is proportional to the needs of the case.  Attachments should be consecutively produced with their parent.  If any member of a family group is produced, all members of that group must also be produced or else logged as privileged.  The Parties shall meet and confer on the reasonableness, feasibility, and burden associated with the identification, search, collection, and production of linked internal or non-public documents and their parents and process for same.

15.     <u>Time Zone</u>.   All provided metadata pertaining to dates and times will be standardized to CET.

**D.      Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in

the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

       a.    Deleted, slack, fragmented, or other data only accessible by forensics.

       b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

       c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

       d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

       e.    Back-up data that are duplicative of data that are more accessible elsewhere.

       f.    Server, system or network logs.

       g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

       h.    Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud"

storage).

**E.      Privilege**

1.      A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document and the basis for the claim (attorney-client privileged or work-product protection). For ESI, the privilege log may be generated using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; file path or, if not feasible, directory path (the location of a file or email at the time that it was collected, and date created/sent. Parties will also include a withdrawn field, which shall be populated if the privilege claim is withdrawn. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other parties no later than 30 days after delivering a production unless an earlier deadline is agreed to by the parties.

2.      Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.

3.      With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.      Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.      Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding, or in any related proceeding or action, shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                                    PAGE - 12
(Case No. 2:22-cv-00665)

1  to those documents, including the attorney-client privilege, attorney work-product protection, or

2  any other privilege or protection recognized by law.  This Order shall be interpreted to provide

3  the maximum protection allowed by Fed. R. Evid. 502(d).  The provisions of Fed. R. Evid. 502(b)

4  do not apply.  Nothing contained herein is intended to or shall serve to limit a party's right to

5  conduct a review of documents, ESI or information (including metadata) for relevance,

6  responsiveness and/or segregation of privileged and/or protected information before production.

7  Information produced in discovery that is protected as privileged or work product shall be

8  immediately returned to the producing party.

9

10  DATED: May 24, 2024

11                              TOUSLEY BRAIN STEPHENS PLLC

12

13                  By:  *s/ Kim D. Stephens*
                          *s/ Rebecca L. Solomon*
                        Kim D. Stephens, P.S.,WSBA #11984

14                      Rebecca L. Solomon, WSBA #51520
                        1200 Fifth Avenue, Suite 1700
                        Seattle, Washington 98101

15                      Telephone:  206.682.5600
                        Fax: 206.682.2992

16                      kstephens@tousley.com
                        rsolomon@tousley.com

17                  By:  *s/ Timothy W. Emery*
                          *s/ Patrick B. Reddy*

18                      Timothy W. Emery, WSBA #34078
                        Patrick B. Reddy, WSBA #34092

19                      **EMERY REDDY, PLLC**
                        600 Stewart Street, Suite 1100

20                      Seattle, WA 98101
                        Phone: (206) 442-9106

21                      Fax: (206) 441-9711
                        Email: emeryt@emeryreddy.com
                        Email: reddyp@emeryreddy.com

22
                        James E. Cecchi*

23                      Caroline F. Bartlett*
                        Jordan M. Steele*

24                      **CARELLA, BYRNE, CECCHI,**

25  AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
    STORED INFORMATION AND ORDER                                           PAGE - 13

26  (Case No. 2:22-cv-00665)

1

**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road

2

Roseland, New Jersey 07068
Telephone: (973) 994-1700

3

Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
cbartlett@carellabyrne.com

4

jsteele@carellabyrne.com

5

Christopher A. Seeger*
Christopher L. Ayers*

6

SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660

7

Telephone: (973) 639-9100
Facsimile: (973) 679-8656

8

cseeger@seegerweiss.com
cayers@seegerweiss.com

9

Zachary S. Bower*

10

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**

11

2222 Ponce DeLeon Blvd.
Miami, Florida 33134

12

Telephone: 973-422-5593
Facsimile: 973-994-1744

13

zbower@carellabyrne.com

14

Scott P. Schlesinger*
Jeffrey L. Haberman*
Jonathan R. Gdanski*

15

Sarah J. Schultz*
**SCHLESINGER LAW OFFICES, P.A.**

16

1212 SE Third Avenue
Ft. Lauderdale, FL 33316

17

Telephone: (954) 467-8800
scott@schlesingerlaw.com
jhaberman@schlesingerlaw.com

18

jgdanski@schlesingerlaw.com
sarah@schlesingerlaw.com

19

*Attorneys for Plaintiffs and the Putative Class*

20

*\* Admitted pro hac vice*

21

DATED: May 24, 2024

22

LANE POWELL PC

23

By: /s/ Erin M. Wilson
Erin M. Wilson (WSBA No. 42454)
wilsonem@lanepowell.com

24

John S. Devlin III (WSBA No. 23988)

25

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY

26

STORED INFORMATION AND ORDER                                              PAGE - 14
(Case No. 2:22-cv-00665)

1    devlinj@lanepowell.com
     Taylor Washburn (WSBA No. 51524)
2    washburnt@lanepowell.com
     Katie D. Bass (WSBA No. 51369)
3    bassk@lanepowell.com
     1420 Fifth Avenue, Suite 4200
4    PO Box 91302
     Seattle, WA 98111
     Telephone: (206) 223-7000
5

6    WINSTON & STRAWN LLP

7    By: */s/* Dana L. Cook-Milligan
     ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     Troy M. Yoshino (*pro hac vice*)
8    tyoshino@winston.com
     Eric J. Knapp (*pro hac vice*)
     eknapp@winston.com
9    Dana L. Cook-Milligan (*pro hac vice*)
     dlcook@winston.com
10   101 California Street, 35th Floor
     San Francisco, CA 94111
11   Telephone: (415) 591-1000

12   *Counsel for Defendants*
     *Mercedes-Benz USA, LLC,*
     *Mercedes-Benz Aktiengesellschaft, and*
13   *Mercedes-Benz Group Aktiengesellschaft*

14

15                **ORDER**

16   Based on the foregoing, IT IS SO ORDERED.

17
     Dated this 30th day of May, 2024.
18

19                *[signature]*
                  Robert S. Lasnik
20                United States District Judge

21

22

23

24